UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOUCH-N-BUY, LIMITED
PARTNERSHIP,

       Plaintiff,

v.

GIROCHECK FINANCIAL, INC.,

       Defendant.
                                      /

Case No. 15-10863

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [34] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [35]**

This matter comes before the Court on the parties' cross-motions for summary judgment. Plaintiff's amended complaint alleges breach of contract, fraud, violation of the Michigan Sales Representative Commission Act, and seeks exemplary damages. Defendant brings three counterclaims, including breach of contract, promissory estoppel, and for an award in the amount due under the account stated. For the reasons stated herein, the Court DENIES Plaintiff's motion for partial summary judgment and GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment.

**I.    Facts**

According to the complaint, Plaintiff sells and services various products to commercial vendors, including "automated transaction machines, credit card processing machines, and related machinery and software." (Dkt. 16, at ¶ 6.) Defendant develops computers and computer software that provide "integrated check to prepaid debit card solutions." (*Id.* at ¶ 7.) Primarily at issue here is Defendant's check cashing alternative, "Check2Card," which

allows merchants to scan customers' identification, process payroll checks, and load check funds onto prepaid, reloadable debit cards. (Dkt. 34, at 5.) On July 12, 2012, the parties entered into an agreement whereby Plaintiff agreed to solicit customers for Defendant and facilitate the installation of Defendant's product. (Dkt. 16, at ¶¶ 9-10.) Plaintiff alleges Defendant failed to provide the "quality computer and computer software services" and "customer support" promised under the contract. (*Id.* at ¶¶ 11-12.)

Defendant denies Plaintiff's allegations, and counters that Plaintiff has materially breached the contract by failing to pay Defendant in full for hardware kits purchased. (Dkt. 17, at 12-13.) That is, during the course of the relationship, Defendant claims it sold and delivered 32 hardware set-up kits to Plaintiff for $1,000 each, but Plaintiff still owes $19,000 in unpaid invoices. (Dkt. 35, at 15-16, 33.) Plaintiff admits it has refused to pay the balance because the invoices are "directly attributable to deficient products and services, expressly rejected by [Plaintiff]." (Dkt. 18, at ¶ 20.)

On October 13, 2014, Defendant purportedly terminated the relationship between the parties. (Dkt. 16, at ¶ 13.) Plaintiff subsequently filed suit, alleging breach of contract, fraud, violation of the Michigan Sales Representative Commission Act, and seeking exemplary damages. Defendant brings three counterclaims. Now before the Court are the parties' cross-motions for summary judgment. Plaintiff seeks summary judgment as to Defendant's liability on the contract and fraud claims, and Defendant seeks summary judgment on all of Plaintiff's claims, as well as on its breach of contract counterclaim.

**II.    Summary Judgment**

Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). When reviewing the record, all evidence and reasonable inferences must be construed by the Court in the light most favorable to the non-moving party. *Id.* (internal citation omitted). Where the parties have filed cross-motions for summary judgment, this standard does not change; the Court must evaluate each motion "on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. U.S.*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. Analysis

#### A. Choice of Law

Pursuant to the choice-of-law provision in the contract, Florida law governs Plaintiff's breach of contract claim. (Dkt. 35-7, at 8 ("This Agreement shall be governed by the laws of the State of Florida.").) With regard to the fraud claim, however, the parties cite both Michigan and Florida law but fail to address which state's laws apply. The fraud claim stems at least in part from representations made prior to entering into the contract. (*See, e.g.*, Dkt. 16, at ¶ 23 ("[Defendant] ... made the misrepresentations to entice Plaintiff to enter into the contract.").) The choice-of-law provision in the contract, however, states only that Florida law "governs" the agreement—not actions preceding it. When deciding a claim of fraud "arising from entering a contract with a choice-of-law provision, the Court should apply standard [] choice-of-law rules" to the fraud claim. *Diamond Comput. Sys., Inc. v. SBC Commc'ns, Inc.*, 424 F. Supp. 2d 970, 980 (E.D. Mich. 2006). The Court thus turns to Michigan's choice-of-law rules to determine which state's laws apply to the claim for

fraud. *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 892 (6th Cir. 1989) (federal courts in diversity cases apply the law of the state in which they sit, "including that state's choice of law provisions") (applying *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Under Michigan law, tort claims (such as fraud) are determined according to the law of the forum, "unless there is a 'rational reason' to displace the forum's law." *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F. Supp. 1216, 1222 n.3 (E.D. Mich. 1997) (citation omitted). Here, there is no reason to displace the law of the forum. The alleged injury occurred to a Michigan company and the effects of the alleged tort were felt in Michigan. *Id. See also AGA Gas, Inc. v. Wohlert Corp.*, No. 5:98-CV-155, 2000 WL 1478466, at *2 (W.D. Mich. July 21, 2000) (agreement's choice of law clause governed contract claims, and law of the forum applied to claims of fraud and misrepresentation). The Court, therefore, applies Michigan law to the fraud claim.[1]

**B.    Admissibility of Exhibit L**

Defendant objects to the Court's use or consideration of Plaintiff's Exhibit L. The exhibit is a purported summary of Thomas Sparks' driving logs, which he allegedly kept during the course of his employment with Plaintiff regarding service calls to merchants. (Dkt. 34, at 9.) Defendant argues the Court should not consider the exhibit because it is not part of the record and the information within it is inadmissible hearsay. (Dkt. 37, at 9.) Evidence submitted at summary judgment "need not themselves be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1985)). The Court "need not decide

---

[1] As a practical matter, the standards for fraud in Florida and Michigan are nearly identical.

whether [the summary of the log] itself is admissible." *DeBiasi v. Charter Cty. of Wayne*, 537 F. Supp. 2d 903, 911-12 (E.D. Mich. 2008). Rather, the focus is "on the admissibility of its contents." *Id.* at 912. If the contents of the summary log could be presented in an admissible form at trial, the Court may consider it in deciding the summary judgment motions. *Id.*

Here, however, Mr. Sparks admits the summary notes are not mere recitations of events from his personal knowledge; rather, he prepared the summary within three weeks of his deposition, relying on information from his driver's log and "various other sources." (Dkt. 37-2, at 4-6.) Mr. Sparks also admits that neither the driver's log, nor any of the other documents used to prepare the summary have been produced in this matter. (*Id.*) Moreover, Plaintiff has failed to respond to Defendant's argument that the Court should not consider Exhibit L. It is thus unclear whether Mr. Sparks could testify to all portions of the exhibit from his personal knowledge, pursuant to Federal Rule of Evidence 602, or whether the contents would be admissible at trial in some other form. The Court, therefore, does not consider the contents of the summary log in analyzing the summary judgment motions.

### C. Breach of Contract

Both parties seek summary judgment in their favor on Plaintiff's claim for breach of contract. Under Florida law, there are three elements required for a breach of contract claim: (1) a valid contract; (2) a material breach; and (3) damages. *See Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). To constitute a material breach, a defendant's "nonperformance of a contract must ... go to the essence of the contract." *Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So. 2d 148, 150 (Fla. Dist. Ct.

App. 2004) (citation omitted). A party's "failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach." *Id.*

Under the contract, Defendant was obligated to provide various services and functions as part of its program in exchange for Plaintiff's agreement to identify potential merchants, promote the program, and procure the engagement of merchants. (Dkt. 16, at ¶¶ 9-15.) The contract explicitly stated that Defendant would provide "installation and training of the System" as well as "technical and customer support." (Dkt. 35-7, at 3.) Plaintiff alleges Defendant materially breached the contract by failing to provide both "a functioning product to distribute" and the necessary technical support, as required under the contract. (Dkt. 16, at ¶¶ 11-12.) Defendant, on the other hand, argues it did not materially breach the contract and moreover, Plaintiff has failed to show any damages. (Dkt. 35, at 24-29.)

Plaintiff supports its claim that Defendant never delivered a functioning product by pointing to testimony from Defendant's general manager admitting the product was not working commercially and "needed adjustments." (Dkt. 34, at 6.) In addition, Plaintiff's employee testified that each time he set up Defendant's system for a merchant, he would attempt a live test transaction, but it never worked. (Dkt. 35-12, at 6.) With regard to its claim that the technical support was inadequate, Plaintiff notes Defendant's technician stated he could not remember the first step of a Check2Card installation, nor any of the minimum requirements for the installation. (Dkt. 34, at 8.)

Defendant agrees the Check2Card system "was not as commercially successful as it or [Plaintiff] had hoped," but argues that it nonetheless "dutifully performed its obligations under the [contract] and worked diligently to resolve issues with the product

6

launch." (Dkt. 35, at 23.) Plaintiff's employees admit they had extensive communication with and assistance from Defendant's primary technical support employee. (*See, e.g.*, Dkt. 35-12, at 7 (admitting Mr. Sparks spoke to Defendant's technical support employee "almost on a daily basis").) Moreover, Defendant's technician testified he was willing to work extended hours to help the customer and "get the situation fixed or whatever the customer had to be solved." (Dkt. 35-13, at 6.) In addition, although Plaintiff argues the Check2Card product "never functioned properly," it appears Plaintiff received commissions on over one hundred transactions from at least August 2012 through October 2013. (Dkt. 37-16.)[2] In light of the above conflicting evidence, the Court finds there are genuine issues of fact as to whether the product and support provided by Defendant were so deficient as to constitute a material breach of the contract.[3]

### D. Fraud

Both parties seek summary judgment in their favor on Plaintiff's fraud claim. To establish fraud, Plaintiff must show that: (1) Defendant made a material representation, (2) that was false, (3) that Defendant knew was false, or made with reckless disregard as to its truth, (4) Defendant made the misrepresentation with the intention that Plaintiff would rely on it, (5) Plaintiff relied on it, and (6) Plaintiff thereby suffered injury. *See*

---

[2] In November 2013, Defendant stopped processing checks using Check2Card and terminated remaining merchant accounts. (Dkt. 37, at 22-23.)

[3] In light of this holding, the Court must also deny Defendant's motion for summary judgment on its counterclaim for breach of contract. (Dkt. 35, at 32-33.) Plaintiff states it refused to pay the outstanding invoices because they were "directly attributable to deficient products and services, expressly rejected by [Plaintiff]." (Dkt. 18, at ¶ 20.) The Court has found genuine issues of fact with regard to whether Defendant's products and services were so deficient as to constitute a material breach. Accordingly, there are also genuine issues of fact regarding whether Plaintiff had a legitimate excuse for its failure to pay.

*51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC*, No. 2:11-cv-12047, 2012 WL 205843, at *3 (E.D. Mich. Jan. 24, 2012).

Plaintiff alleges Defendant made material misrepresentations to Plaintiff in order to entice Plaintiff to enter into the contract. (Dkt. 16, at ¶ 23.) Specifically, Plaintiff alleges Defendant misrepresented "that the [Check2Card] program was ready to launch," (*Id.* at ¶ 19), when in actuality Defendant "knew of the lacking capability and functionality of its computer hardware and/or software." (Dkt. 34, at 16.) For example, Plaintiff cites an email from Defendant's general manager stating that "[t]he tests have been very successful" and "[w]e are offering a complete solution now, it allows us to be way more efficient." (Dkt. 16, at ¶ 19.) In addition, Plaintiff's general partner stated that Defendant "convinced [him] that [the product] worked" by doing a demonstration for him in Defendant's office. (Dkt. 38, at 6-7.) "In retrospect," however, he thinks the demonstration did not actually work as represented. (*Id.* at 7.) Plaintiff alleges it would not have entered into the contract and continued the relationship "had the fraudulent assurances not been provided." (Dkt. 16, at ¶ 24.)

Plaintiff argues further that after the parties entered into the contract, Defendant "attempted to hide the functionality issues by providing 'marketing solutions' to Plaintiff while the technical problems were worked out." (Dkt. 38-1, at 5.) For example, Plaintiff points to an October 2012 email from Defendant's national sales director explaining a new sales program and stating, "[w]e are sure with this new sales program the opportunities for you are much greater and more profitable." (Dkt. 16, at ¶ 19.)

Plaintiff argues none of Defendant's representations described above or cited in its amended complaint "proved true." (*Id.* at ¶ 20.) But the question is not whether

8

representations ultimately "proved true." The question is whether such representations were material misrepresentations known to be false when made, or made with reckless disregard as to their truth. Defendant argues Plaintiff's fraud claim must fail because it has failed to put forth any evidence demonstrating a statement that would satisfy the fraud requirements. The Court agrees with Defendant.

With regard to the product demonstration in Defendant's office and the statement in 2011 that "the tests have been very successful," Plaintiff has offered no evidence showing that these representations were false, let alone knowingly false or recklessly made. That there were subsequent issues with the product functioning properly in the field does not necessarily mean that the statement regarding testing and the in-office demonstration were false or fraudulent. In addition, the statement during the deposition of Defendant's general manager recognizing that the Check2Card product had not been "working commercially" does not satisfy any of the elements required to establish a fraud claim, either. Similarly, the Court fails to see how Defendant's marketing statements constitute material misrepresentations regarding the capabilities and functionality of Defendant's product.

Even viewing the facts in the light most favorable to Plaintiff, Plaintiff has made no showing of any material misrepresentations knowingly or recklessly made by Defendant. As such, the Court grants Defendant's motion for summary judgment as to Count II of the amended complaint.

### E. Michigan Sales Representative Commission Act

Defendant seeks summary judgment in its favor as to Count III of the amended complaint. Under Count III, Plaintiff brings a claim under Section 600.2961 of the

Michigan Sales Representative Commission Act (the "Act"). Plaintiff claims Defendant failed to pay it sales commissions in the amount of $200 per each of the 46 merchants that Plaintiff secured on Defendant's behalf. (Dkt. 16, at ¶¶ 29-30.) Defendant responds that it has paid all commissions owed and that this claim is spurious.[4] (Dkt. 35, at 30.)

Under the Act, a "commission" is defined as "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits." M.C.L. § 600.2961(1)(a). Under the contract, Plaintiff was to "receive as compensation the 'net amount of the set-up fee ... minus 'production costs.'" (Dkt. 35-7, at 4.) The set-up fee was further defined in the contract as $200. (*Id.* at 6.) Because this amount was not expressed "as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits," but rather as a flat "per piece" rate of $200 minus production costs, the Court concludes that the set-up fee does not fall under the definition of commission under the Act. *See Tech. Sales Assocs., Inc. v. Ohio Star Forge Co.*, No. 07-11745, 2009 WL 728519, at *7-8 (E.D. Mich. Mar. 19, 2009) (interpreting statutory language and holding clear language evinces no intent to include in the definition of commission a payment on a "per part" or "per piece" basis).

The Court finds there is no genuine issue of material fact and Plaintiff does not have a claim under the Act for Defendant's alleged failure to pay Plaintiff the $200 set-up fees. Therefore, Defendant is entitled to summary judgment on Count III. In addition, Defendant will be entitled to reasonable attorney fees and costs related to this claim

---

[4] Defendant also notes that, consistent with Plaintiff's general partner's understanding, Defendant never charged nor received set-up fees from merchants. (Dkt. 37, at 15.)

under paragraph six of the Act. M.C.L. § 600.2961(6) ("the court shall award to the prevailing party reasonable attorney fees and court costs.").

### F. Exemplary Damages

Finally, Plaintiff brings a claim for exemplary damages in Count IV of the amended complaint. "Exemplary damages are a class of compensatory damages that allow for compensation for injury to feelings." *Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, No. 10-13181, 2013 WL 27921, at *11 (E.D. Mich. Jan. 2, 2013) (Edmunds, J.) (citation omitted). For an award of exemplary damages to be justified, the "act or conduct complained of must be voluntary and the act must inspire feelings of humiliation, outrage, and indignity" and must also be "malicious or so wilful and wanton as to demonstrate a reckless disregard of [a] plaintiff's rights." *Id*.

Although expressed as a separate Count, "exemplary damages are a remedy, no[t] an independent cause of action." *Zora v. Bank of Am.*, No. 12-10953, 2012 WL 3779169, at *3 (E.D. Mich. Aug. 31, 2012). The Court will not analyze Plaintiff's request for the remedy of exemplary damages as a separate cause of action and therefore dismisses Count IV. *See Santander*, 2013 WL 27921, at *11-12 (dismissing exemplary damages claim because exemplary damages are a sanction and not an independent cause of action).

### IV. Conclusion

For the above-stated reasons, the Court DENIES Plaintiff's motion for partial summary judgment, and GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment. Specifically, the Court GRANTS Defendant's motion for

summary judgment with regard to Counts II, III, and IV and DENIES Defendant's motion with regard to Count I and its counterclaim for breach of contract.

    SO ORDERED.

        S/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: May 23, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2016, by electronic and/or ordinary mail.

        S/Carol J. Bethel
        Case Manager